Olayiwola O. Oduyingbo (RI Bar No. 9427)
Odu@odulawfirm.com
**ODU LAW FIRM, LLC**
888 Reservoir Avenue, Floor 2
Cranston, RI 02910
Telephone:     (401) 209-2029
Facsimile:     (401) 217-2299

Attorney for Plaintiff
Cindy DeCorpo

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CINDY DECORPO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KAHN, LITWIN, RENZA & CO., LTD. d/b/a "KLR," a Rhode Island corporation,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>1. **Violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.*;**<br>2. **Violation of the Age Discrimination in Employment Act of 1967;**<br>3. **Violation of the Older Workers Benefit Protection Act;**<br>4. **Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*;**<br>5. **Violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, *et seq.*; and**<br>6. **Violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, *et seq.***<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

EMPLOYMENT DISCRIMINATION COMPLAINT

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE ACTION ........................................................................................1

PARTIES ......................................................................................................................1

JURISDICTION ............................................................................................................1

VENUE .........................................................................................................................2

FACTUAL BACKGROUND AND GENERAL ALLEGATIONS...............................2

 With High Hopes, Cindy Joins The KLR Team .........................................2

 Cindy Begins Hiring, Supervising, Training, and Managing
  Employees And Programs.............................................................3

 The Culture At KLR Shifts And Defendant Grants Younger
  Employees More Opportunities ...................................................4

 Defendant Reneges On Bonus Promises Made To Cindy .........................5

 Cindy Is Stripped Of Her Internship Program Responsibilities...............6

 The Working Conditions And Culture At KLR Continue
  Deteriorating ................................................................................8

 Cindy Is Excluded From Educational Benefits Offered To Her
  Colleagues And Begins To Feel Retaliated Against For
  Voicing Concerns.........................................................................9

 Cindy Is Reprimanded For Raising Issues To Superiors ......................11

 The COVID-19 Pandemic Gives Defendant An Excuse To Further
  Exclude Cindy............................................................................13

 Defendant Fails To Make Reasonable Accommodations For
  Cindy's Disabilities And Treats Her Differently ......................13

 Defendant Retaliates Against Cindy For Using Her Earned Paid
  Time Off For Medical Conditions .............................................17

 Cindy Is Constructively Discharged From KLR ...................................17

 Ms. DeCorpo Exhausts Her Administrative Remedies And Brings
  This Action.................................................................................18

CLAIMS FOR RELIEF .............................................................................................19

PRAYER FOR RELIEF ............................................................................................20

DEMAND FOR JURY TRIAL ................................................................................21

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

EMPLOYMENT DISCRIMINATION COMPLAINT

**ODU LAW FIRM, LLC**

888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

## COMPLAINT

### SUMMARY OF THE ACTION

1.     Plaintiff Cindy DeCorpo ("Cindy") brings this action against Defendant Kahn, Litwin, Renza & Co., Ltd. ("KLR" or "Defendant") to assert her rights and remedy grave and rampant discriminatory violations committed by Defendant over the course of several years. Cindy is seeking compensatory and punitive damages, counsel fees and costs, and other equitable relief arising out of violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Civil Rights Act of 1991 (Pub. L. 102-166); the Age Discrimination in Employment Act of 1967 (Pub. L. 90-202) ("ADEA"); the Older Workers Benefit Protection Act (Pub. L. 101-433); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, *et seq.* ("FEPA"); and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, *et seq.* ("RICRA").  Cindy hereby alleges as follows:

### PARTIES

2.     Plaintiff Cindy DeCorpo is a citizen and resident of Providence, Rhode Island.

3.     At all times relevant herein, Cindy was employed by Defendant in the State of Rhode Island.

4.     Defendant KLR is a corporation duly organized and incorporated under the laws of the State of Rhode Island and maintains its principal place of business at 951 North Main Street, Providence, Rhode Island 02904.

5.     At all times relevant herein, Defendant was Cindy's "employer" within the meaning of all relevant statutes.

### JURISDICTION

6.     The United States District Court for the District of Rhode Island has federal subject matter jurisdiction under 28 U.S.C. § 1331 because Cindy asserts claims arising under federal law.  Specifically, this action arises, *inter alia*, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Civil Rights Act of 1991 (Pub. L. 102-166); the Age Discrimination in Employment Act of 1967 (Pub. L. 90-202); the Older Workers Benefit

1

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

Protection Act (Pub. L. 101-433); and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

7.    The United States District Court for the District of Rhode Island has supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims set forth herein, each of which arise out of a common nucleus of operative facts as the claims over which the Court has original jurisdiction.

8.    The United States District Court for the District of Rhode Island has personal jurisdiction over Defendant because it has its principal place of business within this District, and it has sufficient minimum contacts in Rhode Island to render the exercise of jurisdiction by this Court both proper and necessary.

<u>**VENUE**</u>

9.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in Rhode Island and Defendant conducts business in Rhode Island. Therefore, Defendant is deemed to reside in this District.  Moreover, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**With High Hopes, Cindy Joins The KLR Team**

10.    Cindy DeCorpo is a forty-nine-year-old professional who resides in Rhode Island.

11.    Defendant, an accounting and business advisory firm, after interviewing Cindy and assessing her qualifications, hired Cindy to serve in the role of Audit Administrative Supervisor on January 5, 2015.

12.    Cindy was initially excited about her new role.  The starting salary was $63,500.00 annually.  She was entitled to benefits including health insurance, dental insurance, 401k participation, long term disability, and tuition assistance.  While she was initially entitled to one week of sick time off and two weeks of vacation time off, Defendant later changed their paid time off policy to "unlimited."  Cindy was also told she would be entitled to regular raises and bonuses.

EMPLOYMENT DISCRIMINATION COMPLAINT

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

13.     Most importantly, Cindy looked forward to working at an accounting firm that held itself out to have a supportive environment with a collegial culture.  Defendant touted its "open-door policy" wherein employees were encouraged to have discussions about any issues or difficulties with superiors.  Defendant advertised that these discussions were aimed at creating a safe space where supervisors and superiors would listen to employees and offer solutions.

## Cindy Begins Hiring, Supervising, Training, and Managing Employees And Programs

14.     Cindy's initial duties included those typical of an Audit Administrative Supervisor, and she also led the charge in managing Defendant's prominent summer internship program (hereinafter, the "Internship Program").  As she began her role, Cindy was to report directly to the Human Resources Director, Steven Loffredo (hereinafter, "Mr. Loffredo"), who had originally hired her.  Cindy also worked with Lauren Amaral ("hereinafter, "Ms. Amaral"), who is over ten years younger than Cindy and worked within the Audit Services Group, to manage the Internship Program.

15.     Cindy, settling in and performing well in her new role, was also tasked with overseeing the hiring process in all areas except for the Advertising Department.  Such duties included electing candidates, sorting through applicants' resumes, reference checking, scheduling phone interviews, and managing in-person interviews.

16.     In or around October of 2015, Cindy was asked to hire an administrative employee over which she would be supervising.  After engaging in the hiring process for several months, Cindy hired Kim Bolton (hereinafter, "Ms. Bolton") as a full time Audit Administrator in December of 2015.  Ms. Bolton was approximately thirty-two years old when Cindy hired her.  Cindy trained Ms. Bolton and another administrative employee, Jennifer Martel (hereinafter, "Ms. Martel").  Cindy directly supervised Ms. Bolton, Ms. Martel, and another administrative employee, Cindy Kenney (hereinafter, Ms. Kenney").

17.     While serving as Ms. Martel's supervisor, Cindy was subjected to multiple and frequent demeaning comments.  On several occasions, Ms. Martel was hostile towards Cindy,

EMPLOYMENT DISCRIMINATION COMPLAINT

stated that she should be the one in Cindy's job, and that she knows more than Cindy.  This made Cindy's job of supervising Ms. Martel[1] incredibly difficult.  Still, Cindy excelled at her job.

18.    Under Mr. Loffredo's supervision, Cindy was often praised in her performance reviews.  Mr. Loffredo seemed to truly care to provide Cindy with direction, and he advocated for her growth within the firm.  He was very attentive and a great mentor.  Cindy never received any verbal or written warnings.

### The Culture At KLR Shifts And Defendant Grants Younger Employees More Opportunities

19.    On or around May 2017, one month before Mr. Loffredo planned to retire from the firm, Ms. Bolton made a request directly to Cindy to have Ms. Bolton's schedule altered. Ms. Bolton stated that this alteration was necessary because Ms. Bolton would be required to attend certain meetings with select individuals from each department.  As her supervisor, Cindy inquired as to what these meetings entailed. Ms. Bolton declined to answer Cindy's question and responded that she was not allowed to disclose any information surrounding those meetings.

20.    Immediately thereafter, Cindy asked her supervisor Mr. Loffredo if he knew any further details.  Cindy, as the person who hired and trained Ms. Bolton and oversaw managing the schedule, felt it was reasonable to request this information in order to make any necessary scheduling shifts.  Ms. Loffredo, also lacking detailed information, informed Cindy that he believed that Ms. Bolton was a part of some type of project that KLR partner Claire Iacobucci (hereinafter, "Ms. Iacobucci") was leading, but that Ms. Bolton was not obligated to tell anybody.  Mr. Loffredo later approached Ms. Iacobucci to further inquire about this project.  He then learned that Ms. Iacobucci oversaw what was coined the "Lean Project."

21.    On information and belief, the Lean Project was intended to identify processes that could be completed more effectively and efficiently.  An independent company participated in the Lean Project to help identify issue areas.  Certain employees from each department were

---

[1] Ms. Martel ultimately resigned from KLR in approximately February/March of 2017.

ODU LAW FIRM, LLC

888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

chosen to participate in the Lean Project. It appeared to Cindy that each selected participant was mandated not to disclose their participation in the Lean Project to those who were not chosen.

22.     At the time that Ms. Iacobucci chose Ms. Bolton to participate in the Lean Project, Ms. Bolton had only been with the firm for a short period of time. Cindy felt confused as to why Ms. Bolton would be chosen to represent the Administrative Department. As the supervisor who hired and trained Ms. Bolton, and as a KLR employee with a longer tenure, Cindy felt she was more qualified to represent the firm's Administrative Department. Cindy searched for an explanation, but Ms. Iacobucci never provided one. Cindy continued in her role wondering if she would have been selected but for her age. Cindy is approximately one decade older than Ms. Bolton.

**Defendant Reneges On Bonus Promises Made To Cindy**

23.     When hired by Mr. Loffredo, Cindy was promised a bonus every year following her first year of employment for handling both the Internship Program and managing the administrative staff, with the amount being contingent on her performance for the year. For example, in her second year of employment, Cindy received approximately $1,500 as her bonus in addition to a raise of approximately $4,000.

24.     But, in or around July/August of 2017, after Ms. Iacobucci took over as my Cindy's supervisor, Cindy and Ms. Iacobucci met to discuss Cindy's performance review written by Mr. Loffredo. In this meeting, Cindy asked Ms. Iacobucci about the yearly bonus that was promised to her for satisfactory performance, the same bonus she would receive when Mr. Loffredo was her supervisor. Despite the fact that any bonuses and raises were reflected and well-documented in the Automatic Data Processing ("ADP") Portal, Ms. Iacobucci claimed that she was unaware of and could not see any raises or bonuses in Cindy's history at the firm. Ms. Iacobucci stated that any information regarding any bonus or raise was nowhere to be found in Cindy's file.

25.     Immediately after this meeting, Cindy called Mr. Loffredo and asked about her bonus. He informed Cindy that he specifically told Ms. Iacobucci about her bonus when he gave Ms. Iacobucci Cindy's performance review immediately preceding his retirement. Cindy then

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

asked Ms. Iacobucci about this conversation, and Ms. Iacobucci responded with the specious policy that administrative staff are not entitled to bonuses, which are reserved solely for professional staff.  This was the first time Cindy had heard of such a novel policy, and this manufactured excuse was contrary to the proven and recent history: Cindy had just received a bonus the prior year.  After recognizing that this sham policy would not hold up, Ms. Iacobucci attempted to placate Cindy by offering her a $750 dollar bonus, far less than the prior year and far less than Cindy was expecting to receive based on her hard work.

### Cindy Is Stripped Of Her Internship Program Responsibilities

26.    After Mr. Loffredo's retirement, Cindy felt an immediate shift in the environment at KLR, and in the amount of support and recognition that she received from Defendant.  Ms. Iacobucci rarely came to Cindy's office to check in with Cindy, like Mr. Loffredo had been doing in the past, nor did Ms. Iacobucci provide any direction as to how Cindy could grow as a supervisor in her position.

27.    This shift became all the more evident in October of 2017, when Ms. Iacobucci made the unilateral decision to move Ms. Bolton's desk so that Ms. Bolton would then be providing administrative support presence on the first floor, where the audit staff members, in large part, were located.  Cindy, on the other hand, remained on the second floor.

28.    It became increasingly clear to Cindy that she was slowly being discarded as a valued member of the team.  It was apparent that Ms. Iacobucci intended to provide Ms. Bolton with growth and direction, and aimed to help her succeed by any means possible.  This was in stark contrast to the level of support and direction that was provided to Cindy, which was essentially nonexistent.

29.    Still, Cindy remained a dedicated member and hoped this would be noticed and appreciated.  In October 2017, she spoke to Ms. Iacobucci regarding the Internship Program and asked her if she could attend the intern interviews as she did when Mr. Loffredo was her supervisor.  Cindy expressed to Ms. Iacobucci how much she had enjoyed going to the University of Rhode Island with Mr. Loffredo and sitting in on his interviews with the college

students.  Cindy relayed that she felt it was an incredible opportunity to learn how to be an effective intern supervisor and grow in that arena.

30.    In response to Cindy's requests to attend the intern interviews just as she had in the past, Ms. Iacobucci firmly uttered: "it would be more appropriate to have someone *younger* attend the interviews."  Indeed, Defendant selected Meredith Nunes (hereinafter, "Ms. Nunes") to attend the interviews at colleges and universities.  Ms. Nunes was around twenty-eight years old when she started at the firm.

31.    Soon after, many (and eventually all) of Cindy's responsibilities with the Internship Program were involuntarily stripped away and handed to the much younger Ms. Nunes.  Despite the fact that Cindy had never received any negative feedback or complaints about her overseeing the Internship Program, several other of Cindy's responsibilities were transferred to Ms. Amaral and Jade Toher (hereinafter, "Ms. Toher").  Both Ms. Amaral and Ms. Toher are younger than Cindy and under forty years old.

32.    In particular, Cindy's ability to participate in meetings concerning the Internship Program decreased.  For example, at routine meetings where employees involved were able to provide recommendations and observations regarding each intern's progress and the program, it became evident that all decisions had been made prior to Cindy's presence.  Though she would timely report to the meeting, the decisions were set in stone and Cindy was unable to provide any feedback.  All decisions made by Ms. Nunes, Ms. Amaral, and Ms. Toher were essentially the final determinations.  At this point, Cindy's opinions and input within the Internship Program were constantly being dismissed and no longer even considered.

33.    Cindy, still hopeful, inquired once more about her opportunities to grow within the firm, requesting more responsibilities from Ms. Iacobucci in the Internship Program. Ms. Iacobucci doubled down on her previous statement and told Cindy: "someone younger to represent the firm would be more suitable."

34.    Defendant did not meet with or otherwise communicate with Cindy regarding the transfer of any of her responsibilities in the Internship Program.  The only information that Cindy received about her responsibilities were the comments made by Ms. Iacobucci in which she was

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

EMPLOYMENT DISCRIMINATION COMPLAINT

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

adamant a *younger* employee was more suitable to represent the firm than Cindy. At this point, one astounding fact became clear to Cindy: Defendant's new policy was to allow only the younger employees to participate in and develop the Internship Program.

35.     Still, Cindy attempted to make a bad situation a bit better.  In or around July/August 2018, Cindy met with Ms. Iacobucci regarding her annual performance review. Cindy expressed how much she really enjoyed working with the interns, and she asked if she could do anything to help in Human Resources. At this point, Cindy was searching for any task just to stay involved with the program which she had grown to love.  Ms. Iacobucci told Cindy to reach out to Ms. Nunes to see if she could give Cindy anything on "her downtime." As instructed, Cindy emailed Ms. Nunes multiple times, but she never received any meaningful response.

### The Working Conditions And Culture At KLR Continue Deteriorating

36.     It became clear to Cindy that Ms. Iacobucci was no longer interested in fostering Cindy's growth within the program and the firm overall.  It was easier for Ms. Iacobucci to dismiss Cindy and tell Cindy to send requests to Ms. Nunes or others, the practical effect of which meant that Ms. Iacobucci no longer had to respond to Cindy's valid requests.  During this time, Ms. Iacobucci's words kept ringing through Cindy's head: Defendant wanted only a *younger* employee to represent the firm.

37.     Around this time in January 2019, Ms. Iacobucci advised Cindy that Ms. Bolton would be assisting another department and obtaining exposure per Ms. Bolton's goals on her annual evaluation.  Ms. Bolton was granted the ability to travel to certain clients, handle Accounts Payable & Receivable, and conduct other interesting assignments in which Cindy had previously expressed interest.  Cindy was never included in discussions regarding these decisions, even though Cindy was Ms. Bolton's direct supervisor.  While Cindy's goals within the programs were not taken seriously and swiftly dismissed, Ms. Iacobucci immediately implemented a plan to help Ms. Bolton achieve her goals and grow within the company.

38.     Cindy began to feel utterly dismayed.  Under Mr. Loffredo's supervision, she was given the opportunity to oversee, as their supervisor, the monetary raises of her reporting

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

employees and any additional benefits that they received.  However, under Ms. Iacobucci's tenure, Cindy was told that she could no longer take part in knowing what Ms. Bolton's raises were. Ms. Iacobucci stated that Cindy was not permitted to see that information and that Cindy could not make any suggestion as to what raises or benefits Ms. Bolton should receive, even though Cindy was her direct supervisor.  Without warning, Cindy was also excluded from access to her employees' timesheets and the amount of paid time off they had used, which she used to receive in the past.  She was told by Human Resources that she no longer had access to that information and that she should speak to Ms. Iacobucci.

39.     At this point, the drought of information relating to Cindy's employees made her job increasingly difficult.  She was unsure of how to correctly monitor her employees' hours and performance if she could not access a simple timesheet.  Ms. Iacobucci began to question Cindy about her leadership abilities and capability of running the department, something that had never been an issue in the past.  As a consequence, this undermined Cindy's authority and affected how her supervisees viewed her.

**Cindy Is Excluded From Educational Benefits Offered To Her Colleagues And Begins To Feel Retaliated Against For Voicing Concerns**

40.     In early 2019, Defendant was providing educational benefits to Ms. Bolton and paying for her to earn a bachelor's degree in Accounting.  This was set up and directed at Ms. Iacobucci's request.  In the course of Cindy's employment up until this point, she did not have equal opportunity to these same educational benefits.  Education benefits for a bachelor's degree was not a typical or standard benefit in Defendant's history.  Traditionally, if any tuition was covered by Defendant, it would be for employees obtaining a master's degree within Defendant's Tuition Reimbursement policy for professional staff only.

41.     On numerous occasions, Cindy asked Ms. Iacobucci to allow her to attend seminars that would aid her growth within the firm.  Ms. Iacobucci responded that, because the internship program was no longer Cindy's main responsibility, she did not feel it was necessary for Cindy to attend these seminars.  Cindy also inquired to Ms. Iacobucci about taking classes to progress her technical skills (i.e., Microsoft Word, Excel, etc.).  Ms. Iacobucci would instead

9

direct Cindy to the IT Manager and told her to ask for help there. The only seminar Ms. Iacobucci allowed Cindy to attend was to progress her supervisory skills. All other requests submitted to both Ms. Iacobucci and Tara Parillo (hereinafter, "Ms. Parillo") in Human Resources regarding continued education outside of the office were denied.

42.     Cindy remembered fondly that her former supervisor, Mr. Loffredo, actively encouraged and allowed her to take numerous seminars outside of the office. Cindy remained confused as to why Ms. Bolton could easily obtain a four-year bachelor's degree that was paid for by Defendant, while Cindy was denied attendance to seminars that were much less costly and much less burdensome for the Defendant.

43.     Around this time, Cindy was moving back into her house after it was repaired for severe water damage. Cindy requested a few days off to move back into her house. Due to the stress on the administrative department after Ms. Bolton's time was split in half (through decisions made by Ms. Iacobucci), Cindy was reprimanded for requesting more than one day off. As a result, Cindy felt compelled to not take the days off that she had earned and needed. It became clear that Ms. Iacobucci had no intention of providing Cindy with the work and life balance that was promised to her and that all the other younger employees routinely received. For example, younger employees were routinely afforded the opportunity to take days off for personal issues, such as for their younger families.

44.     Eventually, in August 2019, Ms. Bolton began the process to transition to another department. Cindy was excluded from overseeing the entire hiring process for the position that Ms. Bolton left vacant. Cindy was merely handed certain resumes to choose from and therefore had limited authority in the hiring process. Christine Prunier ("Ms. Prunier"), Chief Human Resources Officer, gave Cindy a resume from Mia Bernardo (hereinafter, "Ms. Bernardo"). Ms. Prunier informed Cindy that she worked with Ms. Bernardo's mother at a previous job. Cindy picked Ms. Bernardo's resume and was told that Ms. Bernardo had skills that could transfer into the audit administrative position. As Cindy did not have access to others who had applied and could not see many other candidates, Cindy scheduled an interview and eventually hired Ms.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

EMPLOYMENT DISCRIMINATION COMPLAINT

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

Bernardo.  Ms. Bernardo is thirty-two years old.  Ms. Bolton fully transitioned into another department by October 1st, 2019.

45.    As time progressed, Cindy noticed that Ms. Bernardo would act disrespectful towards her after Cindy asked her to complete certain tasks as her supervisor. Ms. Bernardo frequently complained of the work Cindy would assign to her, as Ms. Bernardo made it clear that the work was beneath her.  It seemed Ms. Bernardo was mimicking the culture that Defendant had created around Cindy.  At this time, Cindy felt a massive shift in her relationship with her colleagues and superiors.  She became concerned that Defendant was frustrated with Cindy for voicing her desire to grow within the internship program and the firm, and for asking for the same benefits and opportunities that were provided to her younger co-workers.

**Cindy Is Reprimanded For Raising Issues To Superiors**

46.    Attempting to find a resolution and mitigate Defendant's frustration with Cindy for simply voicing her desires, Cindy approached Sandy Ross (hereinafter, "Ms. Ross") for guidance.  She expressed how hurt she was that all of her responsibilities within the Internship Program were stripped away and transferred to less experienced employees, and that she was excluded from many decisions and communications regarding the Internship Program.  Cindy confided to Ms. Ross that she felt that she was being excluded purposefully because of her age, specifically because Ms. Iacobucci had stated that she was looking for a younger employee. Cindy further stated to Ms. Ross that she did not feel that Ms. Iacobucci was a suitable fit as her supervisor, as Cindy had received very little guidance and direction from Ms. Iacobucci, though Ms. Iacobucci frequently provided Ms. Bolton (a younger employee) with numerous opportunities to obtain growth and always assisted Ms. Bolton in climbing the ladder at the firm. Ms. Ross gave no meaningful response to the conversation Cindy had with her.

47.    Around the same time, Cindy approached Jessica Ashley ("Ms. Ashley") for further advice and informed her of the same issues Cindy was experiencing regarding the lack of opportunity provided to her because of her age.  Cindy expressed to Ms. Ashley how her opinions and questions were constantly being dismissed and turned down.  After these conversations, it was apparent that Ms. Ross and Ms. Ashley reported everything Cindy had said

11

to Ms. Iacobucci. Cindy was then reprimanded by Ms. Iacobucci in multiple meetings and told to stop speaking with Ms. Ross and other staff about issues with the Internship Program or Cindy's employment. This behavior seemed to be in direct contrast to Defendant's purported open-door policy.

48. On a few occasions, Cindy told Ms. Amaral that Ms. Nunes' failure to communicate with Cindy about the Internship Program was frustrating. Ms. Iacobucci reprimanded Cindy for this as well.

49. At this point, Ms. Iacobucci would punish Cindy any time she sought help or spoke about any issues with any employee. Cindy became increasingly frustrated because she was left with no resources for guidance or direction; she was not allowed to effectively perform her job.

50. In February 2020, Cindy attended a meeting with Ms. Iacobucci to discuss her opportunities for growth within the firm, specifically regarding the Internship Program. She voiced her concerns regarding the responsibilities that had been taken away from her, and how Ms. Nunes failed to communicate with Cindy about decisions that Cindy should have overseen. Cindy expressed that this shift was unfair and unwarranted. In response, Ms. Iacobucci stated that Cindy did not need to know the information that Cindy was asking of Ms. Nunes. In particular, Ms. Iacobucci told Cindy that Cindy "asks too many questions, and that's why Ms. Nunes does not respond to [her] emails."

51. At this same meeting, Cindy also asked Ms. Iacobucci where she fits in the firm's future. With a raised voice, Ms. Iacobucci told Cindy that "there is no growth for you, Cindy. No growth with this firm and no growth with the intern program." Cindy was very upset upon leaving this meeting. It was impressed upon her that she had become a burden to Ms. Iacobucci and Defendant given her age, and that no matter how hard Cindy tried to take on more tasks in her supervisory position, she was no longer taken seriously by the employees she supervised nor by her superiors.

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

EMPLOYMENT DISCRIMINATION COMPLAINT

**The COVID-19 Pandemic Gives Defendant An Excuse To Further Exclude Cindy**

52.    In March 2020, Defendant told all employees to work from home, if able, due to the COVID-19 pandemic.

53.    In June 2020, Cindy attended her performance review meeting with Ms. Iacobucci.  Cindy was told that she *officially* would no longer have any role in the Internship Program.  Ms. Iacobucci gave the pretextual reason that Cindy would no longer handle the interns because the firm was working remotely due to the COVID-19 pandemic.

54.    Around this time, Cindy was informed by other employees that other similarly situated employees received raises.  Cindy, however, was told that because of COVID-19, she would not be receiving a raise.

**Defendant Fails To Make Reasonable Accommodations For Cindy's Disabilities And Treats Her Differently**

55.    In September 2020, Cindy was diagnosed with vertigo.  Her symptoms included violent migraines paired with a sensitivity to bright light.

56.    In December 2020, Cindy was diagnosed by her orthopedic doctor with bulging discs in her back.  These bulging discs caused extreme, unbearable pain, especially when Cindy would sit for long periods of time.  This pain while sitting began in 2016 and began to worsen as the years went by.  Cindy worked with a chiropractor to mitigate her pain.

57.    Defendant was aware that Cindy was being treated for her back condition.  Per her chiropractor's suggestion, Cindy reasonably requested from Ms. Parillo and Human Resources a stand-up desk so that she would not have to sit for long periods of time.  Cindy's chiropractor reached out in support of her request for the stand-up desk.  Still, Defendant denied the request and refused to acknowledge the chiropractor as a professional.

58.    Notably, another similarly situated, non-disabled employee, had obtained a stand-up desk from Defendant.  This employee was kind enough to provide Cindy with her stand-up desk and take Cindy's sitting desk so that Cindy could continue working without issue.

59.    At this time, Cindy took additional measures attempting to alleviate and correct her back pain by attending routine physical therapy appointments.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

13

60.    Whenever Cindy had a medical appointment, she would let Ms. Bernardo know the time she planned to leave and when she would be back.  Cindy would inform Ms. Bernardo of the type of medical appointment that it was.  Cindy would then confirm that Ms. Bernardo was in a good spot before Cindy left and made sure she did not need anything from Cindy.

61.     Cindy used her paid vacation time to take off the few hours she missed for her required medical appointments.  She would always ensure that her workload was completed and all audit staff had a good grasp on their tasks before she left for any appointments.  To do this, Cindy would regularly work through weekends and after office hours on weekdays when necessary.

62.    On December 16, 2020, Ms. Iacobucci and Ms. Prunier scheduled an ominous meeting with Cindy for which she was not informed of the subject matter.  Cindy asked in advance if she needed to have anything prepared for this meeting, and neither Ms. Iacobucci nor Ms. Prunier responded.  In this meeting, Cindy was reprimanded for allegedly not working forty-hour work weeks and was told that Ms. Bernardo was concerned about the appointments Cindy had been attending.  Cindy was never notified of this concern prior to this meeting, even though she checked in with Ms. Bernardo daily.  It became clear during this meeting that Ms. Bernardo divulged to others the personal information about Cindy's medical disabilities that Cindy had told Ms. Bernardo in confidence.

63.    In this same meeting, Cindy was further reprimanded by both Ms. Iacobucci and Ms. Prunier for lawfully using her earned paid time off ("PTO") to take just a few hours away from work in a day to attend her necessary appointments related to her disabilities.  Cindy had always been permitted to use this PTO for time away from work.  Cindy had earned it and was entitled to it.  In years prior, Cindy had taken time off using her PTO without any verbal or written reprimand.

64.    Cindy did not understand why her usage of PTO for her medical disabilities suddenly presented a problem, as all her work was completed every week and she had never received a negative response like this before.  Prior to this occurrence, it was implied that this method was acceptable because she and others had been following it for several years.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

14

65.     During the times when Cindy was working from home during the COVID-19 pandemic, Cindy was fortunately able to stand and sit as needed throughout her workday. Therefore, she did not feel it necessary to take a larger amount of time off from work to attend pain management appointments for her back pain. Cindy had become afraid to take off any more time through medical leave, fearing that she would have been phased further out of the little responsibilities she still assumed and looked upon poorly by her supervisees.

66.     But, in February 2021, as the COVID-19 restrictions began to lift, Ms. Bernardo and Cindy were told that they were required to be in the office one day a week to check for received mail. Upon return to the office, Cindy found that Defendant had renovated the floors while the employees were working from home. During this renovation, Cindy's office was destroyed, and she was given a small cubicle. Prior to her return, Defendant never notified Cindy that she would no longer have an office.

67.     In April 2021, Cindy was told by Ms. Iacobucci that she was to continue her hybrid schedule, working from home three days per week while in the office two days per week.

68.     In June 2021, Defendant combined both the Audit and Tax departments. As a result of this merger, Ms. Prunier and Kim Ellinwood (hereinafter, "Ms. Ellinwood") became Cindy's new direct supervisors, replacing Ms. Iacobucci.

69.     Ms. Ellinwood initially agreed that Cindy could continue her hybrid schedule. But, in August 2021, Ms. Ellinwood stated that she needed Cindy in the office more. Gradually, Cindy's schedule transitioned from hybrid to entirely in-person.

70.     Around this time, Ms. Ellinwood informed Cindy that Defendant had hired an assistant for Cindy and that Cindy needed to be in the office to train her. Cindy was, once again, excluded from making any hiring decisions, including for her own assistant.

71.     At this point, Ms. Ellinwood stated that because Cindy was the supervisor, she had to be in the office every day. In stark contrast, Ms. Ellinwood granted similarly situated, non-disabled employees flexible hours due to their living situations. However, when Cindy tried to take time off from work, she received different, adverse treatment.

EMPLOYMENT DISCRIMINATION COMPLAINT

72.     In July 2021, Cindy was told by Ms. Ellinwood to stay clocked in and make up the time Cindy "missed" for her appointments because the office was getting busy. The other staff that Ms. Ellinwood supervised, on the other hand, were not told that they needed to stay late to make up hours for their missed time.

73.     Cindy was confused as to why she was being targeted for missing hours when she always finished her work for each week, while other similarly situated employees received no repercussions.

74.     In October 2021, Cindy reasonably requested that the lights near her cubicle be dimmed because the extremely bright office light was negatively affecting her vertigo disability and worsening her migraines.  Ms. Ellinwood was aware that Cindy was being treated for vertigo.  This request for a reasonable accommodation was denied.

75.     In November 2021, Cindy informed Ms. Ellinwood that she must get weekly allergy shots at Brigham and Women's Hospital.  Per hospital protocol, Cindy was to wait thirty minutes after each allergy shot as a cautionary practice in the case of an adverse reaction to the shot.  Ms. Ellinwood, who is not a medical professional, told Cindy that she should only wait the standard thirty minutes for her first shot, and that she should return to work after five minutes for subsequent shots.  At that time, it became clear that Ms. Ellinwood was frustrated with Cindy's required time off for medical reasons.

76.     In December 2021, Cindy experienced severe stomach pain and left work two hours early to attend an urgent care center.  Ms. Ellinwood was unavailable, so Cindy notified Ms. Parillo of her situation.  Cindy offered to provide a doctor's note for the time missed, and Ms. Parillo stated that, unless Cindy was going to be out of the office for more than three days, Defendant's policy would not require a medical note.  While at urgent care, Cindy was diagnosed with a possible case of diverticulitis.  That night, Cindy received an email from Ms. Parillo stating that after speaking with Ms. Prunier, she would now be requesting a medical note for that day. This was a sudden shift and Cindy believed it occurred because Defendant specifically targeted her.

16

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON. RI 02910
(401) 209-2029

**Defendant Retaliates Against Cindy For Using Her Earned Paid Time Off For Medical Conditions**

77.     After the stomach pain incident in December 2021, Cindy was scheduled to have a meeting with Ms. Prunier and Ms. Ellinwood.  In this meeting, Cindy was reprimanded for using her paid time off from work to care for her medical conditions.

78.     Cindy voiced her frustration that other employees were allowed a more flexible schedule.  Meanwhile, Cindy was being told to be in the office every day and facing repercussions regarding her time off for her medical disabilities.  Cindy was told that there would be "no more appointments" and "next time we meet, it's not going to be good."  Defendants threatened Cindy and stated that if she took any more time away from work for her medical appointments, that she would have her title taken away, or her salary reduced.  At no point in time did Cindy receive anything more than general and broad explanations as to why her time off for her required medical appointments was burdensome.  Cindy was satisfactorily completing all her work each week, and Cindy was complying with Defendant's leave policies.

**Cindy Is Constructively Discharged From KLR**

79.     From June 2021 to December 2021, the Internship Program continued to run and Cindy was completely excluded.  Despite her consistent attempts at providing input, only the younger employees were able to meaningfully participate in the program.  It became entirely evident that there was no longer a place for Cindy at KLR, and Defendant was doing everything in its power to push her out.

80.     The working conditions at KLR accumulated over time such that they became unbearable, unreasonably unaccommodating, and took an extreme toll on Cindy's physical and mental health such that no reasonable person would have continued their employment in such a position.

81.     From January 2021 to December 2021, Cindy actively searched for other jobs so that she could leave the discriminatory work environment at KLR.  Cindy was able to secure several interviews with other prospective employers.  However, when the moment came where Cindy was close to being hired, the interviewer would always mention Claire Iacobucci or

EMPLOYMENT DISCRIMINATION COMPLAINT

another KLR shareholder (*e.g.*, "Do you know Claire?" or "Do you know John Surrette?").  It was apparent that Defendant was being informed of Cindy's interviews, and further, that KLR was actively providing information that prohibited her from successfully gaining new employment.

82.     After six years of loyal and dedicated service, Cindy was constructively discharged from Defendant on December 28, 2021.  Upon her discharge, she was replaced by another employee who was twenty-five years old.  While this employee does not have the same exact title, she assumes all of the same duties.

**Ms. DeCorpo Exhausts Her Administrative Remedies And Brings This Action**

83.     On or about September 17, 2022, Cindy filed a Charge of Discrimination with the Rhode Island Commission for Human Rights ("RICHR") and the United States Equal Employment Opportunity Commission ("EEOC").  In particular, Cindy alleged over the course of eighteen pages that Defendant discriminated again her based on her age, failed to provide reasonable accommodations and engaged in disability discrimination, and retaliated against her for raising valid concerns.

84.     Defendant, after requesting an extension to the file its response, filed a three-page position statement on November 4, 2022.

85.     Thereafter, and in accordance with R.I. Gen. Laws § 28-5-24.1(c), Cindy elected to terminate all proceedings before the RICHR and the EEOC, and instead assert her rights and remedy KLR's violations in Court.  On February 7, 2023, the RICHR issued Cindy a Notice of Right to Sue.  On March 17, 2023, the EEOC issued Cindy a Notice of Right to Sue.  Cindy has therefore timely and properly exhausted administrative remedies and has satisfied all pre-conditions to the filing of this action.

86.     The facts are straightforward–Defendant discriminated against Cindy on several occasions.  Now, Defendant refuses to face the consequences.  Cindy brings this action to force Defendant to do so.

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

ODU **Law Firm, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

## CLAIMS FOR RELIEF

87.    Plaintiff realleges and incorporates therein by reference paragraphs 1 through the immediately preceding paragraph, inclusive, as if fully set forth herein.

### First Claim for Relief

*Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended in the Civil Rights Act of 1991, (Pub. L. 102-166)*

88.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, retaliated against Cindy for engaging in protected activity (including, *inter alia*, reporting issues to Human Resources) in violation of Title VII, and thereby deprived Cindy of rights secured under Title VII, causing Cindy to suffer damages as aforesaid.

### Second Claim for Relief

*Violation of the Age Discrimination in Employment Act of 1967 (Pub. L. 90-202)*

89.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, subjected Cindy–who was over forty years old and qualified for the position as set forth in the ADEA–to adverse employment action due to her age, causing Cindy to suffer damages as aforesaid.

### Third Claim for Relief

*Violation of the Older Workers Benefit Protection Act (Pub. L. 101-433)*

90.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, targeted Cindy due to her age and limited her access to employee benefits including, *inter alia*, paid time off, medical leave, and continuing education reimbursement programs, causing Cindy to suffer damages as aforesaid.

### Fourth Claim for Relief

*Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.*

91.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination based on Cindy's disabilities within the meaning of the ADA.  Cindy was qualified to perform the

19

ODU LAW FIRM, LLC
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

essential job functions under the ADA, yet Defendant failed to make reasonable accommodations to Cindy's requests. Making reasonable accommodations would not have created any undue hardship for Defendant. Cindy was subjected to adverse employment actions due to her disabilities, causing Cindy to suffer damages as aforesaid.

## Fifth Claim for Relief

*Violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 et seq.*

92.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination based on Cindy's age and disabilities within the meaning of the FEPA, and retaliated against Cindy for engaging in protected activity in violation of FEPA, and thereby otherwise deprived Cindy of her rights secured under FEPA, causing Cindy to suffer damages as aforesaid.

## Sixth Claim for Relief

*Violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 et seq.*

93.    Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful discrimination based on Cindy's age and disabilities within the meaning of the RICRA, and thereby otherwise deprived Cindy of her rights secured under RICRA, causing Cindy to suffer damages as aforesaid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray and respectfully requests that this Court grant the following relief:

A.  A declaratory judgment declaring that the acts and/or omissions of Defendant, including, but not limited to those complained of herein, are in violation of Title VII of the Civil Rights Act, the ADEA, the Older Workers Benefit Protection Act, the ADA, FEPA, and RICRA;

B.  An injunction directing Defendant to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated;

C.  An injunction or other equitable relief, including, but not limited to, an award of back

pay, front pay or reinstatement, and other compensation and/or benefits, and to make Cindy whole for all earnings and benefits Cindy would have received but for the violations;

D.  An award of all actual, general, special, incidental, statutory, punitive, compensatory, liquidated, consequential, and/or restitutionary damages to which Cindy is entitled;

E.  An award of prejudgment interest, reasonable attorneys' fees, and costs; and

F.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: May 5, 2023

**ODU LAW FIRM, LLC**

By:    /s/ Olayiwola O. Oduyingbo

**Olayiwola O. Oduyingbo, Esq.**
RI Bar No. 9427
888 Reservoir Avenue, Floor 2
Cranston, RI 02910
Phone: (401) 209-2029
Fax: (401) 217-2299
Odu@odulawfirm.com

**ATTORNEY FOR PLAINTIFF, CINDY DECORPO**

**ODU LAW FIRM, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

EMPLOYMENT DISCRIMINATION COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.  I further caused to be served, via the United States Mail, a copy of the foregoing document to counsel of record at their last known address.

By:   /s/ *Olayiwola O. Oduyingbo*

**Olayiwola O. Oduyingbo, Esq.**
RI Bar No. 9427
888 Reservoir Avenue, Floor 2
Cranston, RI 02910
Phone: (401) 209-2029
Fax: (401) 217-2299
Odu@odulawfirm.com

**ATTORNEY FOR PLAINTIFF,
CINDY DECORPO**

**ODU Law Firm, LLC**
888 RESERVOIR AVENUE, FLOOR 2
CRANSTON, RI 02910
(401) 209-2029

1

EMPLOYMENT DISCRIMINATION COMPLAINT